# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| ROBERT HINSHAW,<br><br>    Plaintiff,<br><br>vs.<br><br>LIGON INDUSTRIES, L.L.C., and FISHER HYDRAULICS,<br><br>    Defendants. | No. C07-3029-MWB<br><br>**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANTS' MOTION IN LIMINE** |

_____

## I. INTRODUCTION

Plaintiff Robert Hinshaw filed a two-count complaint against Defendants alleging Defendants (1) violated the Iowa Wage Payment Collection Law (IWPCL) by failing to pay Hinshaw timely severance pay, and (2) breached the parties' January 12, 2007, contract by failing to honor the terms in the alleged contract. Hinshaw was employed by defendant Fisher Hydraulics as a General Manager in 1999. His employment contract with Fisher contained a severance agreement. Defendant Ligon Industries thereafter purchased Fisher, and Hinshaw remained employed as General Manager until January of 2007 when he left the company. Hinshaw argues that the parties reached a subsequent severance agreement on or about January 12, 2007, and that under this agreement he is entitled to greater severance pay than the severance pay under his Fisher agreement. Hinshaw also argues that under either agreement, Defendants failed to timely pay his severance under the IWPCL. Defendants argue no subsequent agreement was reached, and that Defendants complied with the IWPCL by paying his severance under the Fisher agreement.

Defendants moved for complete summary judgment on Hinshaw's claims, and the court ultimately denied Defendants relief, allowing the case to proceed to trial except for Hinshaw's claim for liquidated damages under the IWPCL. Dkt. # 31. Trial is set for June 9, 2008. On May 7, 2008, Defendants filed a motion in limine asking the court to exclude three types of evidence that may be presented at trial. Dkt. # 32. Hinshaw filed his resistance on May 28, 2008. Dkt. # 36, 37. Defendants did not request oral argument on its motion, although Hinshaw captioned and concluded his motion with a request for oral argument. Local Rules, however, also require that a request for oral argument "be supported by a showing of good cause." N.D. IA. L.R. 7(c). The court does not believe good cause is shown in the instant case, and the court therefore denies Hinshaw's request for oral argument. As a result, the matter is fully submitted and ready for disposition.

## II. ANALYSIS OF MOTION IN LIMINE
### A. *Evidence Of Witness's Criminal Conviction And Prior Conduct*

Defendants seek to preclude Hinshaw from impeaching the testimony of a probable defense witness named Jim Delk. Delk was the General Manager for McWane, Inc., just prior to his employment with the Defendants. In 2005, Delk was convicted of knowingly conspiring to discharge wastewater in violation of the Clean Water Act while he was employed at McWane. Defendants assert that Delk's conviction is inadmissible under Federal Rule of Evidence 609, and that any cross examination regarding the facts underlying his conviction is also improper under Rule 608(b). Finally, even if Rules 609 and 608(b) do not preclude the admission of this information, Defendants argue that evidence of the conviction or the facts underlying the conviction are also inadmissible pursuant to Rule 403.

2

Hinshaw concedes, and the court agrees, that Delk's conviction cannot be inquired into under Rule 609 because Delk's conviction was later vacated on appeal. *See United States v. Robison*, 505 F.3d 1208, 1211 (11th Cir. 2007) (vacating Delk's conviction because the definition of "navigable waters" in the jury charge was erroneous). Hinshaw argues, however, that the facts underlying his conviction can be inquired into on cross examination under Rules 608(b) and 403. Specifically, Hinshaw seeks to impeach Delk's testimony by inquiring into Delk's conduct in conspiring to violate federal law, knowingly violating McWane's National Pollutant Discharge Elimination Systems (NPDES) permit, and instructing another to falsify a water sample.

In relevant part, Rule 608(b) states:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness. . . .

Fed. R. Evid. 608(b). "In considering the admissibility of this sort of evidence, the court balances the relevancy of the question as bearing on honesty and veracity with the prejudicial impact of the statement." *United States v. Amahia*, 825 F.2d 177, 180-81 (8th Cir. 1987).

Hinshaw's specified areas of inquiry appear to focus on the appellate court's finding in Delk's appeal that

> Trial testimony established that defendant Delk was "everybody's boss" at the plant, and that on multiple occasions, defendant Delk ordered McWane employees to pump process wastewater from the basements, despite knowing

> that the wastewater had nowhere to go but Avondale Creek. Further testimony established that defendant Delk watched as wastewater spilled or was pumped into the center courtyard of the plant, and that Delk once instructed [an employee] to falsify a water sample for inspectors.

*Robison*, 505 F.3d at 1213. There is no doubt that the last specific instance of conduct—instructing an employee to falsify a water sample—relates to Delk's character for truthfulness. The other specific instances of conduct, however, do not relate to crimen falsi, or "[a] crime in the nature of perjury." Black's Law Dictionary ___ (8th ed. 2004); *see United States v. Dennis*, 625 F.2d 782, 798 (8th Cir. 1980) ("Rule 608(b) would permit inquiry into the specific acts that may have led to the arrest if those acts related to crimen falsi, e.g., perjury, subornation of perjury, false statement, embezzlement, false pretenses."). The fact that Delk knew he was pumping wastewater into the creek or the courtyard does not mean that he did anything untruthful, even though he might have known such conduct was illegal. Thus, under Rule 608(b), the court grants Defendants' motion to the extent that Hinshaw cannot impeach Delk concerning anything unrelated to crimen falsi, which, based on the representations made in this case, means Hinshaw can only inquire into whether Delk instructed another employee to falsify a water sample.

The court also finds that such inquiry is not prohibited under Rule 403. Rule 403 precludes the admission of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. In this case, the probative value relates to Delk's capacity for truthfulness, and the potential prejudice appears to relate to the possibility that the jury would infer Defendants acted dishonestly in dealing with Hinshaw because Delk acted dishonestly when employed at a different company. As Hinshaw points out, "[t]he inquiry [into Delk's conduct] is relevant solely to aiding the jury in determining Delk's capacity for truthfulness; the facts surrounding his

dishonest conduct at McWane are clearly not similar to or related to [Defendants'] alleged acceptance of Hinshaw's offer to resign." Dkt. # 36. The court agrees. The possibility of prejudice of the type noted above is exceedingly low, and the Defendants fail to alert the court to any other possible prejudice. Instead, Defendants merely argue that the probative value of such impeachment is of little value. The court does not agree, as the probative value of Delk's capacity for truthfulness is great. As a result, the court denies Defendants' motion in limine to the extent that it requests Hinshaw be precluded from impeaching Delk on the basis of falsifying a water sample. Hinshaw may inquire into that specific instance of conduct. However, the court grants the Defendants' motion in limine concerning Delk's illegal, but not untruthful, conduct. Thus, Hinshaw may not inquire into Delk's knowledge of pumping wastewater into impermissible areas.

### B. *Plaintiff's Testimony Regarding Statements Made By Others*

Defendants request that the court preclude Hinshaw from testifying that Tom Swalin and Paul Allen, employees of Defendants, told Hinshaw that Leon Nolen had told Swalin and Allen that Nolen had accepted Hinshaw's resignation. Defendants argue that such testimony is inadmissible hearsay under Federal Rule of Evidence 802. Hinshaw argues that this testimony is admissible as an admission by a party-opponent under Rule 801(d)(2), and because it may be offered *not* to prove the truth of the matter asserted but to explain Hinshaw's conduct in reaction to hearing such statements.

It is apparent to the court that there are actually two statements at issue here, and thus it raises double hearsay concerns. First, it is alleged that Nolen told Swalin and Allen that Nolen had accepted Hinshaw's resignation. Second, it is alleged that Swalin and Allen told Hinshaw what Nolen had told them. Each set of statements raises hearsay concerns,

and although the parties fail to specifically address the double hearsay nature of the statements, the parties' arguments are adaptable to this situation.

Under Rule 801(d)(2), a statement is not hearsay if "[t]he statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity. . . ." Hinshaw seeks to introduce evidence of the statements by Nolen, Swalin, and Allen to prove that Defendants accepted Hinshaw's resignation, or alleged offer. Acceptance, of course, is an element to be established in Hinshaw's breach of contract claim. Defendants deny that they accepted any alleged offer by Hinshaw. Nolen, as CEO of defendant Ligon Industries, is clearly vested with the authority to accept any alleged offer by Hinshaw. Swalin and Allen are also employees of Defendants. Therefore, Nolen's statements to Swalin and Allen, and Swalin and Allen's statements to Hinshaw, are party admissions in an individual and representative capacity that Defendants accepted Hinshaw's alleged offer under Rule 801(d)(2)(A).

Finally, because Hinshaw's conduct after hearing such statements is relevant to whether he rescinded or abandoned any contract, the statements are also not hearsay under Rule 801(c). Rule 801(c) defines hearsay as a statement "offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Hinshaw may use Nolen, Swalin, and Allen's statements to explain Hinshaw's actions after hearing such statements. If so used, they are not hearsay, and thus admissible. But because the court finds any double hearsay problems resolved under Rule 801(d)(2)(A), the statements are admissible even if they are used to prove the truth of the matter asserted. As a result, the court denies Defendants' motion in limine that requests the court to preclude Hinshaw from testifying that Swalin and Allen told Hinshaw that Nolen had told Swalin and Allen that Nolen accepted Hinshaw's resignation.

### C. *Evidence Regarding The Size And Financial Status Of Defendants*

Lastly, Defendants seek to preclude Hinshaw from offering evidence about the size or financial status of their companies. Defendants argue such evidence is irrelevant under Rules 401 and 402, and that such evidence is too prejudicial under Rule 403. Hinshaw agrees that the financial status of Defendants' companies is irrelevant and inadmissible. However, Hinshaw argues that the size of Defendants' companies and the number of employees managed by key defense witnesses is relevant to ascertaining the credibility of defense witnesses regarding their business acumen and experience.

The court agrees with Hinshaw. In this case, the jury will be asked to determine whether a contract was created based on the words and actions of the parties. The business experience and acumen of Defendants' employees, particularly CEO Nolen and Chairman John McMahon, is relevant to how they conducted themselves before and after receiving Hinshaw's letter on January 12, 2007, and what they intended their conduct to mean. The size of Defendants' companies, in terms of the number of employees at each company, is relevant to Nolen and McMahon's experience as businessmen, and is thus relevant to ascertaining their credibility regarding their explanations of how they conducted themselves on or about January 12, 2007. For the same reasons, the number of employees Nolen, McMahon, and others manage is relevant to how they acted during the relevant time period, and what they meant by those actions.

The court does not believe the probative value of this information is outweighed by the danger of unfair prejudice under Rule 403. If the "size" of Defendants' companies is limited to the number of employees, and financial status is not inquired into, then the likelihood of prejudice is very low. Therefore, the court grants Defendants' motion in limine to the extent that it requests the court to preclude Hinshaw from inquiring into Defendants' financial status. Hinshaw cannot inquire into Defendants' financial status.

But the court denies Defendants' motion to the extent that it requests the court preclude Hinshaw from inquiring into the number of employees and relative size of Defendants. Hinshaw is allowed to inquire into how many employees Nolen and McMahon manage, and the size—in terms of numbers of employees—of the companies they manage.

### III. CONCLUSION

Upon the foregoing, Defendants' May 7, 2008, Motion In Limine, Dkt. # 32, is **granted in part and denied in part**, as follows:

1. That part of the motion seeking to exclude Delk's vacated conviction and the underlying facts related to his vacated conviction is **granted** as to Delk's vacated conviction and underlying facts that do not relate to crimen falsi, but it is **denied** as to whether Delk requested a co-worker to falsify a water sample while employed at McWane.

2. That part of the motion seeking to exclude statements made by Nolen, Swalin, and Allen that Nolen had accepted Hinshaw's resignation is **denied**.

3. That part of the motion seeking to exclude the size and financial status of Defendants is **granted** as to Defendants' financial status, but is **denied** as to Defendants' size in terms of employees and the number of employees managed by Nolen and McMahon.

**IT IS SO ORDERED.**

**DATED** this 2nd day of June, 2008.

*/s/ Mark W. Bennett*
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA